# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# Lynchburg Division

| | |
|---|---|
| **DARTON ENVIRONMENTAL, INC.**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:17-cv-00072 |
| ) | |
| **FJUVO COLLECTIONS, LLC**, ) | |
| ) | |
| **TG RECYCLE OIL, LLC**, ) | |
| ) | |
| **GUO DENG CHEN, aka ANDY CHEN**, ) | |
| ) | |
| **GREEN OIL RECYCLE, INC.**, ) | |
| ) | |
| **JIANBIN ZHENG, aka DANIEL ZHENG**, ) | |
| ) | |
| **ADAM ZHENG**, ) | |
| ) | |
| Defendants. ) | |
| ) | |

_____

### AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COMES NOW your Plaintiff, Darton Environmental, Inc., and files this Complaint for breach of contract and business torts against Defendants. In support thereof, Plaintiff states as follows:

### NATURE OF THE CASE

1. This is a civil action in diversity jurisdiction, for damages alleging acts by Defendant against Plaintiff including business conspiracy, conversion and breach of contract.

2. The suit alleges that Defendant breached a contract with Plaintiff which allowed it to use proprietary technology of Plaintiff in exchange for strict noncompete and confidentiality

agreements to protect Plaintiff's technology.

3. The suit seeks compensatory and punitive damages, injunctive relief, and imposition of a constructive trust for profits wrongfully obtained by Defendants.

## PARTIES, JURISDICTION AND VENUE

4. This case arises under the Constitution of the United States and the laws of the Commonwealth of Virginia. Plaintiff is a corporation organized under the laws of, and doing business in, the Commonwealth of Virginia. Defendant Jianbin "Daniel" Zheng ("Jianbin Zheng") is a natural person, and a citizen of the State of Indiana. Defendant Adam Zheng ("Adam Zheng") is a natural person, and a citizen of the State of Indiana. Defendant Jianbin Zheng is also the principal of Defendant Green Oil Recycle, Inc., the principal and the sole Member of Defendant TG Recycle Oil, LLC, and a former Member of Defendant FJUVO Collections, LLC ("FJUVO"). Defendant Guo Deng "Andy" Chen ("Chen") is a natural person, and a citizen of the State of Tennessee. Chen is also the principal and a Member of Defendant FJUVO Collections, LLC.

5. Defendant FJUVO Collections, LLC is a limited liability company organized under the laws of and doing business in the State of Tennessee. The Members of FJUVO are natural persons, whose names and states of citizenship are as follows:

    a. Zusong Wang, Greendale, Indiana.

    b. Jingxiang Liu, Kimball, Tennessee.

    c. Minxiu Liu, Indianapolis, Indiana.

    d. Yiran Chen, Coller Point, New York.

    e. Mengjuan Wang, Indianapolis, Indiana.

    f. Hengku Huang, Indianapolis, Indiana.

    g. Yanfang Chen, East Chicago, Indiana.

    h. Guodeng Chen ("Andy Chen"), Murfreesboro, Tennessee.

Accordingly, complete diversity exists between Plaintiff and Defendant FJUVO, as all Members of FJUVO are diverse from Plaintiff.

6. Defendant TG Recycle Oil, LLC ("TG") is a limited liability company organized under the laws of and doing business in the State of Indiana. Defendant Jianbin Zheng, also a citizen of the State of Indiana, is the sole Member of Defendant TG Recycle Oil, LLC. Accordingly, for purposes of diversity jurisdiction, Defendant TG Recycle Oil, LLC, is a citizen of the State of Indiana. Defendant Green Oil Recycle, Inc. ("GOR") is a for-profit corporation organized under the laws of and doing business in the State of Indiana, and accordingly a citizen of the State of Indiana. The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

7. The Court has jurisdiction under 28 U.S.C. §1332.

8. The Court also has pendant jurisdiction as provided under 28 U.S.C. §1367(a).

## STATEMENT OF FACTS

9. Plaintiff Darton Environmental, Inc. ("Darton") is a corporation engaged in the business of collecting and refining used cooking oil and selling it to biofuel companies. Darton refines the cooking oil through a process called "heat and settle" involving superheated water, which separates waste material from the oil ("the Darton technology").

10. Defendant FJUVO Collections, LLC ("FJUVO") is a limited liability company which has historically been primarily engaged in collecting, refining and selling used cooking oil. Defendants Chen and Daniel Zheng were the initial Members of FJUVO.

11. Defendant TG Recycle Oil, LLC, ("TG") is a limited liability company engaged in collecting, refining and selling used cooking oil. TG is a spin-off company of FJUVO. Defendant

Chen is the principal of TG.

12. Defendant Green Oil Recycle, Inc. ("GOR") is a for-profit corporation engaged in collecting, refining and selling used cooking oil. Defendant Daniel Zheng is the principal of GOR.

13. Defendant FJUVO had a business relationship with Plaintiff in which Defendant collected and supplied Plaintiff with used cooking oil for Plaintiff's refining operation.

14. Prior to its relationship with Plaintiff, Defendant had experimented with attempting to refine used cooking oil by use of a centrifuge.

15. The Darton technology is a significantly less labor-intensive and less costly means of refining than the centrifuge method.

16. In 2015, the parties began negotiating.

17. For FJUVO, the primary individuals involved in the negotiations were Guo Deng Chen, also known as Andy Chen ("Chen"), FJUVO's principal; Jianbin Zheng, also known as Daniel Zheng, and his son Adam Zheng.

18. Chen and Daniel Zheng were partners in FJUVO, and Adam Zheng, the only one of the three with a firm command of the English language, was the initial contact person and the primary negotiator on behalf of FJUVO.

19. For Darton, the primary negotiator was its principal, Daryl Hubbard ("Hubbard").

20. Plaintiff initially presented Defendant with two offers.

21. Option A proposed that Darton build for FJUVO a refining system utilizing Darton technology, for a price of $197,950 and an additional contingency amount not to exceed $10,000. In return, FJUVO would grant Darton an exclusive right to purchase each load of refined oil from the new FJUVO facility, at one cent below the "IL Jacobsen market price."

22. Option B proposed that Darton provide the plans, design and materials list for a refining system for FJUVO for $40,000. In return, FJUVO would grant Darton an exclusive right to purchase each load of refined oil from the new FJUVO facility, at one cent below the "IL Jacobsen market price."

23. In the end, Defendant did not exercise either option, and Plaintiff offered another option, to which the parties eventually agreed.

24. Plaintiff offered to allow Defendant to inspect its refining facility, solely for the purpose of evaluating a potential business relationship between the parties.

25. In exchange, Defendant would supply to Darton a minimum of six truckloads of oil per month for eighteen months, at one cent below the IL Jacobsen market price, which Darton could then re-sell for two cents over market price.

26. One truckload of oil is approximately 46,000 pounds.

27. If FJUVO honored its agreement to sell refined oil to Darton at one cent below market, the ability to sell at two cents over market would net Darton approximately $1380 profit per truckload.

28. Darton intended thereby to profit from essentially licensing FJUVO to use its proprietary Darton technology, in exchange for the exclusive rights agreement to purchase refined oil at one cent below market price.

29. On October 21, 2015, the parties executed a "Buy and Sell Agreement" memorializing their final agreement. A copy is attached as Exhibit 1.

30. The Buy and Sell Agreement recited that "[i]n exchange for and in consideration of the right to see the proprietary equipment of DARTON ENVIRONMENTAL…, FJUVO Collections, LLC agrees to sell and… DARTON ENVIRONMENTAL, INC agrees to buy (6)

truckloads … per month of … used cooking oil for (18) months beginning November 1, 2015."

31. However, Plaintiff insisted upon strict non-compete and confidentiality agreements, in order to protect its proprietary technology.

32. On October 21, 2015, the parties executed two documents, a "Non-Compete Agreement" and a "Confidentiality Agreement."

33. The Noncompete Agreement obligated Defendants not to sell their oil to other companies in competition with Darton for ten years.

34. In the Noncompete Agreement, Defendant acknowledged that "the information provided by DARTON ENVIRONMENTAL, INC. is proprietary and recipient [FJUVO] warrants and guarantees that s/he will not offer it for sale, share or seek to profit from such information…. The recipient warrants that throughout the duration of this agreement and for a period not to exceed 10 years following the culmination, completion or termination of this agreement, that s/he will not directly or indirectly engage in any business that would be considered similar in nature to … DARTON ENVIRONMENTAL, INC…."

35. The Agreement defines "confidential information" as "any and all technical and non-technical information provided by DARTON ENVIRONMENTAL, INC, including but not limited to … any proprietary information related in any way to … plans, methods, research, development,[or] programs … pertaining to any business of DARTON ENVIRONMENTAL, INC…."

36. The Agreement further entitled Plaintiff to injunctive relief for any violations. It read,

> The Recipient herein acknowledges (i) the unique nature of the protections and provisions established and contained within this Agreement, (ii) that the Company shall suffer irreparable harm if the Recipient should breach any of said protections or provisions, and (iii) that monetary damages would be inadequate to compensate the Company [Darton] for said breach. Therefore, should the Recipient cause a breach of any of the provisions contained within this agreement, … then the Company shall be entitled

to injunctive relief….

37. A copy of the Non-compete Agreement is attached as Exhibit 2.

38. The Confidentiality Agreement provides further protection to Darton. It defines "confidential information" as "[t]echnical and business information relating to Discloser's [Darton's] proprietary ideas, patentable ideas copyrights and/or trade secrets, existing or contemplated products and services, software [and] schematics, regardless of whether such information is designated as "Confidential Information" at the time of its disclosure."

39. The Confidentiality Agreement stipulated that "Recipient shall use the Confidential Information only for the purpose of evaluating potential business and investment relationships with Discloser."

40. Defendant further promised to "limit disclosure of Confidential Information within its own organization to its directors, officers, partners, members and/or employees having a need to know and shall not disclose Confidential Information to any third party … without the prior written consent of Discloser."

41. Like the Non-Compete Agreement, the Confidentiality Agreement states that "[i]f there is a breach or threatened breach of any provision of this Agreement, … Discloser shall have no adequate remedy in money or other damages and accordingly shall be entitled to injunctive relief…."

42. A copy of the Confidentiality Agreement is attached as Exhibit 3.

43. The Agreements were signed for Defendant by its principal Andy Chen, and for Plaintiff by its principal, Daryl Hubbard.

44. After the agreements were signed, Plaintiff allowed Chen and Daniel and Adam Zheng to examine the proprietary equipment at the Darton refinery. Daniel Zheng also took photographs

of the equipment.

45. Chen and Daniel and Adam Zheng were all fully aware of the sensitive nature of the Darton technology, and of Darton's desire to maintain its proprietary nature.

46. However, shortly after the agreements were signed and FJUVO representatives inspected the Darton refinery, FJUVO and its agents Chen and the Zhengs conspired together to breach the agreements.

47. FJUVO quickly set up its own refinery in Hammond, Indiana, and later converted its old centrifuge refinery in Murfreesboro, Tennessee to a "heat and settle" facility using the Darton technology, and began selling refined oil therefrom.

48. Defendants Chen and TG also conspired to use and in fact began to use the Darton technology in TG's refinery in Highland, Indiana.

49. Defendants Daniel Zheng and GOR also conspired to use and in fact began to use the Darton technology at their refinery in Highland, Indiana.

50. To date, between FJUVO, GOR and TG, at least three refineries and perhaps additional facilities have been constructed using the Darton technology.

51. The refineries are located in Murfreesboro, Tennessee, and Highland and Indianapolis, Indiana.

52. In addition, Defendants quickly began selling refined oil to other buyers, in direct competition with Darton and in violation of the ten-year Noncompete Agreement.

53. As a result of the breaches by Defendants, Plaintiff has been caused to suffer severe financial losses.

54. In April, 2017, Chen told Hubbard that TG's Highland refinery was selling four truckloads of refined oil per month, the Indianapolis refinery two to three truckloads per month,

and the FJUVO Murfreesboro facility four to six truckloads per month.

## COUNT I vs. Defendant FJUVO – Breach Of Contract

55. The allegations of paragraphs 1 through 52 are adopted and incorporated herein by reference as if each allegation had been separately realleged.

56. Defendant FJUVO had an enforceable written contract with Plaintiff.

57. Under the contract, Defendant was required to keep Plaintiff's proprietary cooking oil refinery process confidential and to refrain from using the information to compete with Plaintiff.

58. Defendant both disseminated Plaintiff's proprietary information and used the information to directly compete with Plaintiff.

59. As a result of Defendant's breach, Plaintiff has suffered continuing and ongoing damages in lost profits from the oil Defendant never transferred to Plaintiff.

60. As a further result of Defendant's breach, Plaintiff has suffered significant lost profits from business Plaintiff likely would have realized with TG and GOR had not Defendant disseminated Plaintiff's proprietary information, in an amount not known at this time.

## COUNT II vs. All Defendants – Conversion

61. The allegations of paragraphs 1 through 58 are adopted and incorporated herein by reference as if each allegation had been separately realleged.

62. Plaintiff holds a property interest in the proprietary Darton technology.

63. As alleged herein, Defendants wrongfully exerted dominion over the proprietary Darton technology in denial of or inconsistent with Plaintiff's rights.

64. Defendants' conversion of Plaintiff's proprietary technology was willful and wanton and in conscious disregard of the rights of Plaintiff.

65. As a direct and proximate result of Defendants' conversion, Plaintiff has been damaged

and is entitled to recover from Defendants in an amount to be determined at trial.

**COUNT III vs. All Defendants - Tortious Interference With Business Expectancy and/or Prospective Economic Advantage**

66. The allegations of paragraphs 1 through 63 are adopted and incorporated herein by reference as if each allegation had been separately realleged.

67. Plaintiff had a business expectancy in continuing to receive refined oil from Defendant FJUVO at below market price, which Plaintiff could resell at a profit. This expectancy presented the probability of future economic benefit to Plaintiff.

68. It was contemplated in the contract between the parties that any use of Darton technology by Defendants would be in furtherance of Defendants' agreement to sell the oil to Darton, and not to sell to Darton's competitors.

69. Defendants had full knowledge of Plaintiff's business expectancy with them.

70. Defendants interfered with Plaintiff's business expectancy through the use of improper means and methods as set forth herein, including breaching the Non-Compete and Confidentiality Agreements, misappropriating the Darton technology, disseminating the Darton technology to other Defendants without permission or license from Plaintiff, and selling refined oil directly to Darton's competitors.

71. As set forth herein, Defendants wrongfully appropriated trade secrets of Plaintiff, including but not limited to the design information for the Darton refining techonology.

72. As set forth herein, Defendants used and continue to use the proprietary Darton technology to unfairly compete with and damage Plaintiff.

73. In interfering with Plaintiff's business expectancy, Defendants acted willfully and maliciously and in conscious disregard for the rights of Plaintiff.

74. Coupled with Defendants' theft of the Darton technology, Defendants have ceased to

honor their contract with Darton to supply refined oil, and instead are refining it with the stolen technology and selling to other buyers who are direct competitors of Darton, at higher profits.

75. As a proximate result of Defendants' unlawful appropriation and dissemination of the proprietary Darton technology, Plaintiff has lost its profitable business relationship with Defendant FJUVO.

76. Absent the intentional interference by Defendants, it is reasonably certain that Plaintiff would have realized the expectancy.

77. As a further proximate result of Defendants' unlawful appropriation of the proprietary Darton technology, Plaintiff has lost potential sales or licensing of the Darton technology, which is now being unlawfully duplicated and disseminated by Defendants with no remuneration to Plaintiff.

78. As a result of the tortious conduct of Defendants, Plaintiff has suffered and will continue to suffer substantial damages, both in lost profits from sale of oil from FJUVO, and in lost revenue from selling or licensing the Darton technology to other refiners including Defendants TG and GOR.

**COUNT IV vs. All Defendants - Statutory Business Conspiracy—Va. Code § 18.2-499(B)**

79. The allegations of paragraphs 1 through 76 are adopted and incorporated herein by reference as if each allegation had been separately realleged.

80. Defendants, by virtue of the conduct described herein, participated, cooperated, and agreed among themselves, to enter into multiple combinations, associations, agreements, and/or mutual understandings for the purpose of willfully and maliciously injuring Plaintiff in his reputation, trade, business, or profession.

81. Defendants undertook these actions with full knowledge, intentionally, purposefully,

willfully, maliciously, and without lawful justification.

82. Indeed, the entire intention of Defendants Chen and the Zhengs, at the time of inspecting Plaintiff's refinery, was to wrongfully appropriate the proprietary Darton technology and convert it to the benefit of themselves and the other Defendants, to the detriment of Plaintiff.

83. By virtue of Defendants' conspiracy, in violation of sections 18.2-499(B) and 18.2-500 of the Virginia Code, Plaintiff has suffered injury to its trade, business, profession, and reputation, both in lost profits from sale of oil from FJUVO, and in lost revenue from selling or licensing the Darton technology to other refiners, including Defendants TG and GOR.

### COUNT V vs. All Defendants – Common Law Business Conspiracy

84. The allegations of paragraphs 1 through 81 are adopted and incorporated herein by reference as if each allegation had been separately realleged.

85. By virtue of the conduct described herein, Defendants did act in concert together to unlawfully damage Plaintiff's business, with the result that Plaintiff suffered significant losses.

86. By virtue of the conduct described herein, Defendants did act in concert to wrongfully appropriate the proprietary Darton technology, which Defendants did use unlawfully to directly compete with Plaintiff.

87. By virtue of the conduct described herein, Plaintiff lost profits from sale of oil from FJUVO, and in lost revenue from selling or licensing the Darton technology to other refiners, including Defendants TG and GOR.

### COUNT VI vs. All Defendants - Violation of Virginia Uniform Trade Secrets Act

88. The allegations of paragraphs 1 through 85 are adopted and incorporated herein by reference as if each allegation had been separately realleged.

89. By virtue of the actions described herein, Defendants did wrongfully appropriate and

disseminate the proprietary Darton technology belonging to Plaintiff, and did use that information to directly compete with and damage Plaintiff.

90. The confidential information unlawfully procured by Defendants consists of trade secrets including the proprietary Darton technology.

91. The information referenced above includes formula(s), pattern(s), compilation(s), program(s), device(s), method(s), technique(s), and/or process(es).

92. The information referenced above derives both actual and potential independent economic value.

93. The information referenced above was not generally known to other persons or entities.

94. The information referenced above was not readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

95. Plaintiff made reasonable efforts to maintain the secrecy and confidentiality of said confidential information, including contracting with Defendant FJUVO for Non-Compete and Confidentiality Agreements specifically making the information proprietary and confidential.

96. Defendants acquired the confidential documents by theft, misrepresentation, and/or breach of duty to maintain their secrecy or with knowledge or reason to know that said acquisition was by theft, misrepresentation, and/or breach of duty to maintain their secrecy.

97. Defendants utilized and/or disclosed to others the proprietary Darton technology without the express or implied consent of Plaintiff.

98. Defendants continue to use said proprietary information and/or trade secrets without the consent and/or authorization of Plaintiff.

99. Defendants have and continue to disclose said proprietary information and/or trade secrets without the consent and/or authorization of Plaintiff.

100. The actual loss suffered by Plaintiff to date is unknown at this time. Defendants' unjust enrichment, to date, as a result of their said taking, use, retention, and/or disclosure of said proprietary information is unknown at this time.

## COUNT VII vs. All Defendants – Constructive Trust

101. The allegations of paragraphs 1 through 98 are adopted and incorporated herein by reference as if each allegation had been separately realleged.

102. The Virginia Supreme Court has held that "[c]onstructive trusts arise, independently of the intention of the parties, by construction of law … in order to prevent what otherwise would be a fraud. They occur not only where property has been acquired by fraud or improper means, but also where it has been fairly and properly acquired, but it is contrary to the principles of equity that it should be retained, at least for the acquirer's own benefit." *Leonard v. Counts*, 272 SE 2d 190, 195 (Va. 1980).

103. In the instant case, Defendants FJUVO, Chen and the Zhengs wrongfully utilized Plaintiff's proprietary technology to directly damage Plaintiff, and further disseminated the technology to the other Defendants, to the severe damage and harm of Plaintiff.

104. All Defendants have used and continue to use Plaintiff's proprietary technology to directly compete with Plaintiff.

105. Although FJUVO, Chen and the Zhengs may have initially obtained the technology lawfully, their dissemination of the technology and their use of it in violation of their Non-compete Agreement was wrongful and improper. "It is contrary to the principles of equity" that the profit wrongfully obtained thereby should be retained.

WHEREFORE, Plaintiff respectfully prays this Court for the following relief:

1.      An award of compensatory damages in the amount of $250,000 against Defendant FJUVO for breach of contract, TREBLED in accordance with Code of Virginia § 18.2-500.

2.      An award against all Defendants jointly and severally of $350,000 for lost profits. TREBLED in accordance with Code of Virginia § 18.2-500.

3.      An award of $350,000 in punitive damages for Defendants' willful and wrongful actions in misappropriating and disseminating Plaintiff's proprietary technology.

4.      Imposition of a constructive trust in the amount of any past or future profits obtained by Defendants due to their wrongful use of Plaintiff's proprietary technology.

5.      An injunction forbidding Defendants to use the proprietary Darton technology in the future except under the terms of any contract that may be agreed to by Plaintiff, and requiring that if no such contract is obtained, that Defendants dismantle any components of their refineries containing Darton technology.

6.      An award of reasonable attorney's fees and costs incurred in bringing this action, as provided by Code of Virginia § 18.2-500.

7.      Such other and further relief as shall seem to this honorable Court to be just and equitable.

                                      Respectfully submitted,

                                      Darton Environmental, Inc.
                                      By Counsel

_____/s/_____
Rick Boyer, Esq.
VSB No. 80154
Relevant Law, PLLC
102 Northwynd Cir.
Lynchburg, VA 24502
Telephone: 434-401-2093
Facsimile: 434-239-3651

## CERTIFICATION

I, Rick Boyer, counsel for Plaintiff in this cause, hereby certify that on this 25th day of April, 2018, I caused a true and correct copy of this Amended Complaint to be served via this Court's CM/ECF system upon the following counsel for Defendants:

Bevin Alexander, Esq.
FREEMAN DUNN ALEXANDER GAY LUCY & COATES, PC
1045 Cottontown Rd
Lynchburg, VA 24503
Phone: 434-528-3400
Fax: 434-385-0365
balexander@freemandunn.com
*Counsel for Defendants Jian Bin Zheng, Adam Zheng, Green Oil Recycle, Inc and TG Recycle Oil, LLC.*

Joshua A. Mullen, Esq. (Tenn. Bar. No. 28388)
Appearing *pro hac vice*
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
Baker Donelson Center, Ste. 800
211 Commerce St.
Nashville, TN 37201
Phone:  615-726-7318
Fax: 615-744-7318
Email:  jmullen@bakerdonelson.com

Austin K. Purvis, Esq. (Tenn. Bar. No. 032329)
Appearing *pro hac vice*
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
Baker Donelson Center, Ste. 800
211 Commerce St.
Nashville, TN 37201
Phone:  615-726-7318
Fax: 615-744-7318
Email:  apurvis@bakerdonelson.com

Matthew D. Davison, Esq. (Va. Bar. No. 44826)
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
100 Med Tech Pkwy.
Johnson City, TN 37604

Phone:  423-928-0181
Fax: 423-928-5694
Email:  mdavison@bakerdonelson.com

*Counsel for Defendants FJUVO Collections, LLC and Guo Deng Chen.*